UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-936-RGJ

LABORERS' INTERNATIONAL UNION                                     Plaintiff
OF NORTH AMERICA, LOCAL UNION
NO. 576

v.

CHURCHILL DOWNS RACETRACK,                                       Defendant
LLC

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on cross-motions for summary judgment.  [DE 20; DE 21].

Briefing is complete, and the matter is ripe.  [DE 22; DE 23].  For the reasons below, Plaintiff's

Motion for Summary Judgment [DE 20] is **GRANTED IN PART, DENIED IN PART**, and

Defendant's Motion for Summary Judgment [DE 21] is **DENIED**.

## I.    BACKGROUND

Plaintiff and Defendant are parties to a collective bargaining agreement ("CBA").  [DE 1-

1 at 6].  The CBA governs employment relations between Defendant and all of its "full-time,

hourly, maintenance department and housekeeping department Employees." *Id.* at 8.  Defendant

hosts live horse-racing in the spring, summer, and fall.  [DE 21-1 at 454].  In response to its

"increased need for maintenance and housekeeping work at various times throughout the year,"

Defendant "historically has supplemented its bargaining unit workforce by outsourcing

maintenance and housekeeping work performed at Churchill Downs Racetrack." *Id.*  Exhibit A

("Classification and Wage Rates")  to the CBA provides that Defendant "has the right to hire part-

time Employees after the close of the Spring Race Meeting and must terminate these Employees

prior to the beginning of the Fall Race Meeting."  [DE 1-1 at 31-32].  Article II ("Management

1

Rights") further provides that Defendant "shall have the right to determine whether and to what extent the Company's business and the work required in its business shall be performed by employees covered by this Agreement." *Id.* at 11. Yet the "enumeration of management prerogatives herein is not intended to be inclusive, nor is it the intent of this article to interfere with employee rights granted under this Agreement." *Id.*

In November 2018, Plaintiff learned Defendant was allegedly "employing part-time employees *after* the start of the Fall Race meeting." [DE 20-1 at 121 (emphasis in original)]. In December 2018, Plaintiff filed a grievance, as required by Article VI ("Grievance Procedure and Arbitration") of the CBA, and "met with the Company to discuss a possible resolution, which is a common practice and required by the initial steps of the grievance procedure." *Id.* Section 1 of Article VI provides:

> Section 1. In the event *a dispute arises under the terms and conditions of this Agreement*, the following grievance procedure shall apply:
>
> 1. The Employee shall notify the Steward or Business Manager within ten (10) working days of any alleged violation.
>
> 2. The Steward or Business Manager or Agent shall discuss the matter with the Employee's Immediate Supervisor within three (3) working days.
>
> 3. If not resolved, the grievance shall be reduced to writing and submitted to the Local Union Representative, who shall within five (5) working days meet with the authorized job site representative.
>
> If the matter has not been resolved by Step 3, either party may within ten (10) working days notify the other of the intention to proceed to arbitration.

[DE 1-1 at 17 (emphasis added)].

Plaintiff later withdrew its December 2018 grievance. [DE 20-1 at 121]. Plaintiff asserts that it withdrew its December 2018 grievance because "[t]he Company, through a grounds supervisor, verbally agreed to stop using its subcontractors after the Fall." *Id.*

In October 2019, Plaintiff "learned that the Company was again employing part-time employees from a temporary staffing agency after the Fall Race Meeting had already begun." [DE 20-1 at 121]. Plaintiff filed a grievance in November 2019 and—after Defendant refused to arbitrate it—filed suit in this Court a month later. [DE 20-1 at 121; DE 1].

Plaintiff alleges that Defendant breached the CBA by refusing to arbitrate the dispute. [DE 1 at 4]. Plaintiff moves the Court to compel Defendant to arbitration under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). [DE 1 at 1]. Plaintiff also moves for costs, expenses, and attorney's fees. *Id.* at 4. The November 2019 grievance and Defendant's refusal to submit to arbitration is at the heart of this case and the parties' cross-motions for summary judgment.

## II.     STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in a light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696,

702 (6th Cir. 2008); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).  The non-moving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-moving party must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. Pro. 56(c)(1)(A)–(B); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

The Court's standard of review does not change when the parties file cross-motions for summary judgment.  *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions.").  Thus, in reviewing cross-motions for summary judgment, a court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

## III.   <u>DISCUSSION</u>

Plaintiff moves the Court to "compel [Defendant] to arbitrate the [] grievance" and to award it "attorneys' fees and costs due to the [Defendant's] bad faith refusal to arbitrate this case."  [DE 20-1 at 120].  Defendant argues that the Court should deny Plaintiff's request for arbitration because it is procedurally barred and substantively unmerited under the CBA.  [DE 21-1 at 464-70].  Defendant also argues that the Court should not award fees and costs.  [DE 22 at 577].

1.   <u>Procedural Arbitrability</u>

4

Defendant argues that the affirmative defenses of laches and waiver apply to bar Plaintiff from compelling arbitration. [DE 21-1 at 465-67]. Plaintiff responds that the arbitrator, not the Court, decides whether these defenses bar arbitrability. [DE 23 at 620-23].

The Supreme Court has repeatedly held that arbitrators, not courts, decide whether the defense of laches applies. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) ("[I]n the absence of an agreement to the contrary, issues of substantive arbitrability are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide") (internal quotation marks, citation, and formatting omitted); *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 35 (2014); *see also Motors Ins. Corp. v. PASCO, Inc.*, No. 5:06CV2911, 2007 WL 184718, at *9 (N.D. Ohio Jan. 19, 2007) ("Several recent United States Supreme Court and lower court decisions affirm that when it comes to a laches claim of delay in asserting the right to arbitration, the arbitrator determines timeliness according to the terms of an arbitration agreement"). As to waiver, the Sixth Circuit has held that the Court may properly "resolve waiver-through-inconsistent-conduct" claims, like the one Defendant asserts here. *See JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008); *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 494 (6th Cir. 2020).

### a. Waiver-through-inconsistent-conduct

Defendant argues that Plaintiff did not "'proceed to arbitration' following the Step 3 denial. Rather, [Plaintiff] chose to take no further action. By not pursuing the 2018 Grievance to arbitration, [Plaintiff] waived its right to arbitrate the grievance against [Defendant] and its alleged use of part-time employees." [DE 22 at 575]. Plaintiff counters: "[Defendant], through a grounds

5

supervisor, verbally agreed to stop using its subcontractors after the Fall Race. Believing the matter had been resolved, [Plaintiff] withdrew its grievance." [DE 20-1 at 121].

"The [Federal Arbitration Act] manifests a 'liberal federal policy favoring arbitration agreements.'" *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 972 (6th Cir. 2020) (quoting *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011)). "In view of that federal prerogative, the 'waiver of the right to arbitration is not to be lightly inferred.'" *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 494 (6th Cir. 2020) (quoting *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012)). "A party implicitly waives its arbitration right when the party's acts are completely inconsistent with its arbitration right and the party's conduct is prejudicial to an opposing party." *Borror*, 979 F.3d at 494 (quotation marks, citation, and formatting omitted). As for the first element, although the Sixth Circuit has "declined to sharply define what conduct suffices [to establish waiver], it typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-litigation efforts to arbitrate." *JPD, Inc.* 539 F.3d at 393. "The strong presumption in favor of arbitration works against finding waiver in cases other than those with the most compelling fact patterns." *Id.*

Defendant has failed to carry its "heavy burden" of establishing Plaintiff's waiver. *See Systran Fin. Servs. Corp. v. Giant Cement Holding, Inc.*, 252 F. Supp. 2d 500, 508 (N.D. Ohio 2003) ("[T]he party seeking to prove waiver has a heavy burden"). Plaintiff asserts that it withdrew its grievance based on representations from one of Defendant's supervisors. [DE 20-1 at 121]. Plaintiff's asserted reliance on the supervisor's alleged promise appears to be consistent with a type of grievance resolution contemplated by Article VI. [DE 1-1 at 17 ("The Steward or Business Manager or Agent shall discuss the matter with the Employee's Immediate Supervisor

6

within three (3) working days.  If not resolved, the grievance shall be reduced to writing and submitted to the Local Union Representative, who shall within five (5) working days meet with the authorized job site representative")].  Because there is a genuine issue of material fact about Plaintiff's conduct, the Court cannot find as a matter of law that Plaintiff "acted completely inconsistently with any reliance" on its arbitration right by voluntarily withdrawing its December 2018 grievance based on the alleged promise of one of Defendant's supervisors.  In addition, although not dispositive, the Court notes this is not the "typical" waiver situation.  *JPD, Inc. 539 F.3d at 393.*  Finally, even if Defendant could show that Plaintiff's actions were completely inconsistent with any reliance on its arbitration right, Defendant has failed to establish that it has been prejudiced by Plaintiff's delay in moving to compel arbitration.  Defendant argues, without citation to any authority, that it "has been prejudiced" by Plaintiff's delay in filing the grievance "both because of the loss of potential evidence, primarily in the form of witness testimony, and in the considerable increase in potential damages should [Plaintiff] prevail on its claim."  [DE 21-1 at 467].  But courts that have found prejudice based on a delay in moving to compel arbitration have required much more than just "potential loss of evidence" and "potential damages."  *See Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002)  ("[A] party may waive the right by delaying its assertion to such an extent that *the opposing party incurs actual prejudice*") (emphasis added);  *Johnson Assocs.*, 680 F.3d at 718 (finding waiver of arbitration after 8 months of litigation in which the moving party actively scheduled discovery, including depositions);  *S. Sys., Inc. v. Torrid Oven Ltd.*, 105 F. Supp. 2d 848, 854 (W.D. Tenn. 2000)  (finding waiver of arbitration after 18 months of litigation in which the moving party engaged in discovery, including 10 depositions); *AFS Logistics, LLC v. Cochran*, No. 3:16-CV-3139, 2017 WL 4947512, at *4 (M.D. Tenn. Oct. 31, 2017)  (finding waiver of arbitration after 8

months of litigation in which the plaintiff failed to raise arbitration even in its amended initial pleadings, engaged in attempts to settle, and opposed the defendant's motion to dismiss on the merits). The Court finds that Plaintiff has not waived its right to arbitration because its actions here are not completely inconsistent with any reliance on its arbitration right, Defendant has not shown sufficient prejudice, and there is a strong presumption in favor of arbitration.

2.     Substantive Arbitrability

Defendant argues that "[t]here is no factual or legal foundation for [Plaintiff's] claims because [Defendant] did not and does not hire part-time employees to perform maintenance and housekeeping work." [DE 21-1 at 467]. Defendant also argues that "no language" in Exhibit A "speaks to the performance of bargaining unit work third party contractors, nor does [Exhibit A] include any language precluding [Defendant] from outsourcing such work, which is what [Defendant] did." *Id.* at 468. Plaintiff disagrees: "Defendant argues that there is no substantive basis for either the 2018 or the 2019 grievances. But Defendant does not argue that the instant dispute is not substantively arbitrable." [DE 23 at 623]. Because the CBA contains a broad arbitrability provision, Plaintiff contends that the dispute is subject to arbitration. *Id.*

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). "American labor policy generally favors resolution of labor contract disputes by private, collectively bargained mechanisms." *Local 689 In'tl Union of Elec. Workers v. Hewitt Soap Co.*, 65 F. Supp. 2d 717, 719 (S.D. Ohio 1999) (citing LMRA and *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976)). Thus, any consideration of whether a dispute is arbitrable must "begin with the presumption that

the national labor policy favors arbitration." *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007).

The Sixth Circuit has provided four "guiding principles for determining whether a grievance is arbitrable":

> (1) [A] party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*United Steelworkers of Am. v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994) (quotation marks and citation omitted).

In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment." *Kovac v. Superior Dairy, Inc.,* 930 F. Supp. 2d 857, 864 (N.D. Ohio 2013) (internal quotation marks and citation omitted). "When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks, citation, and formatting omitted). "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Id.* "If the district court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration." *Id.*

Here, the parties dispute Defendant's "right to subcontract" and the "proper interpretation of a 'part-time' employee under the CBA." [DE 20-1 at 125]. Plaintiff argues that the CBA

contains a broad arbitration provision. *Id.* at 124. Defendant does not respond to this argument. The CBA's arbitration provision provides that "[i]n the event a dispute arises under the terms and conditions of this Agreement, the following grievance procedure shall apply." [DE 1-1 at 17]. This provision does not limit the types of disputes that are arbitrable, but rather provides that any dispute that "arises under the terms and conditions" of the CBA is arbitrable. This is a broad arbitration provision. *See Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 578 (6th Cir. 2003) ("We have . . . held . . . that an arbitration clause requiring arbitration of any dispute arising out of an agreement is extremely broad") (internal quotation marks and citation omitted); *Electrolux Home Prod., Inc. v. Mid-S. Elecs., Inc.*, No. CIV.A. 6:07-CV-016-K, 2008 WL 3493466, at *3 (E.D. Ky. Aug. 11, 2008) (finding arbitration clause broad because it provided that the parties agreed to arbitrate any disputes that "relate to this agreement or its breach") (formatting omitted); *Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 448 n. 3 (6th Cir.2005) (finding arbitration clauses broad that provided that "[a]ny controversy arising out of or relating to [the appellee's] accounts . . . shall be settled by arbitration"); *see e.g., Battaglia v. McKendry,* 233 F.3d 720, 725 (3d Cir.2000) ("arising under" and "arising out of" are given broad construction); *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) ("Many courts have concluded that an arbitration clause applying to disputes 'arising under' or 'in connection with' the agreement constitutes a broad arbitration clause").

Because the CBA contains a broad provision, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators." *Highlands,* 350 F.3d at 577 (internal quotation marks and citation omitted). Defendant does not direct the Court to an "express provision excluding a specific dispute," but appears to argue that the CBA intended to exclude this

dispute from arbitration: "In short, Exhibit A relates solely to part-time employees of [Defendant], of which it has none, and does not place any limits on the use of third-party contractors by [Defendant]. This is fully consistent with the right of [Defendant] to outsource work as recognized and reserved by the parties in [Article II]." [DE 21-1 at 468].

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 585 (1960) is on point. There, the employer refused to arbitrate a grievance filed by the union after union members were laid off because the employer began contracting out maintenance work previously done by union employees. *Id.* at 575. The arbitration clause at issue specifically excluded "matters which are strictly a function of management." *Id.* at 576. The employer argued that its decision to contract out work was strictly a management function and therefore not subject to arbitration. *Id.* at 584. The Supreme Court disagreed, stating that "[c]ontracting out work is the basis of many grievances; and that type of claim is grist in the mills of the arbitrators." *Id.* at 584. The Supreme Court also noted that a specific collective bargaining agreement or a written collateral agreement could exclude subcontracting claims from the grievance procedures or arbitration, but because there were no such exclusions, and the employer made no showing that contracting out fit within the management-function exception, the grievance was arbitrable. *Id.* at 584–85.

Based on *Warrior*, Defendant's argument that the dispute is not arbitrable based on its management rights under Article II is unpersuasive, especially as the CBA provides that the intent of Article II is not "to interfere with employee rights granted under this Agreement." [DE 1-1 at 11]; *see District 30 United Mine Workers of America v. Sovereign Coal Corp.,* 704 F.2d 329, 330 (6th Cir.1983) ("Disputes regarding the contracting out of work clearly are subject to arbitration"); *see also Armco Emps. Indep. Fed'n v. AK Steel Corp.*, 252 F.3d 854, 862 (6th Cir. 2001) (finding issue of contracting-out was substantially arbitrable). Because the Court cannot say "with positive

11

assurance" that the CBA's arbitration provision "is not susceptible of an interpretation that covers the asserted dispute," this dispute is arbitrable. *Mead Corp.*, 21 F.3d at 131.

          3.      <u>Costs, Expenses, and Attorney's Fees</u>

Plaintiff requests costs, expenses, and attorney's fees because, among other things, it "was forced to expend its resources to sue the Company and ask a court to order it to live up to the agreement it made." [DE 20-1 at 128]. Defendant objects, arguing that attorney's fees are inappropriate because "[t]here has been absolutely no indication of bad faith, frivolous refusal, or unjustified action." [DE 22 at 578].

"Attorney fees are awardable under the Labor Management Relations Act ("LMRA") if a party pursues or defends a lawsuit in bad faith or without justification." *Wackenhut Servs., Inc. v. Int'l Guards Union of Am., Loc. No. 3*, No. 3:08-CV-304, 2010 WL 1491439, at *7 (E.D. Tenn. Apr. 12, 2010). But the Sixth Circuit has cautioned that attorney's fees should not be awarded if the non-moving party's alleged bad faith is based on the "act underlying the substantive claim." *See Shimman v. Int'l Union of Operating Engineers, Loc. 18*, 744 F.2d 1226, 1231 (6th Cir. 1984) ("To allow an award of attorney fees based on bad faith in the act underlying the substantive claim would not be consistent with the rationale behind the American Rule regarding attorney fees. By refusing to penalize a litigant whose judgment concerning the merits of his position turns out to be in error, the American Rule protects the right to go to court and litigate a non-frivolous claim or defense").

Plaintiff argues that Defendant acted in bad faith by refusing to arbitrate. [DE 20-1 at 128]. As framed by Plaintiff, Defendant's bad faith is based on the "act underlying" Plaintiff's substantive claim for relief. While the Court disagrees with Defendant about the substantive

arbitrability of the parties' dispute, the Court declines to find that Defendant has acted in "bad faith." As a result, the Court will not award costs, expenses, and attorney's fees to Plaintiff.

## IV.   <u>CONCLUSION</u>

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Plaintiff's Motion for Summary Judgment is **GRANTED IN PART, but DENIED IN PART** as to Plaintiff's request for costs, expenses, and attorney's fees.

(2) Defendant's Motion for Summary Judgment is **DENIED**.

(3) Having determined the grievance is arbitrable, the Defendant is **ORDERED** to submit the Plaintiff's grievance to arbitration in accordance with the parties' collective bargaining agreement.

(4) This matter is **DISMISSED** and **STRICKEN** from the active docket of this Court.

(5) The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

March 23, 2021

Copies to:      Counsel of record